DOWNEY BRAND LLP
JAMIE P. DREHER (Bar No. 209380)
jdreher@downeybrand.com
SHERRY HAUS (Bar No. 215123)
shaus@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:   916.444.1000
Facsimile:    916.444.2100

Attorneys for KERSHAW, COOK & TALLEY, PC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| KERSHAW, COOK & TALLEY PC, a California corporation<br><br>Plaintiff,<br><br>v.<br><br>NELSON NATIONAL LAW FIRM, LLC, an Arizona limited liability company, dba NELSON NATIONAL LAW GROUP<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

PLAINTIFF, Kershaw, Cook & Talley PC, by and through its attorneys Downey Brand LLP, hereby alleges as follows:

## INTRODUCTION

1. This case is being filed to obtain a declaration from the court determining how attorney's fees generated from the litigation of certain Camp Fire cases can be distributed in compliance with California law and the California Rules of Professional Conduct. Specifically, in 2018 Plaintiff, Kershaw, Cook & Talley ("KCT"), was contacted by a California legal marketing firm (the "Marketing Firm") and was asked whether it was interested in obtaining referrals of cases arising from the wildfire that took place in November 2018 in Paradise, California (also known as the "Camp Fire"). KCT, which had extensive experience handling mass tort litigation, indicated

that it was interested in obtaining such referrals.

2. For purposes of obtaining the referrals, the Marketing Firm advised that it was working with a law firm known as the Nelson National Law Group ("Nelson"). In exchange for referring Camp Fire cases to KCT, KCT would forego paying a specific dollar amount for each case referred, but rather would pay 40% of all attorney's fees generated by the referred cases to Nelson. At all times, KCT believed that the Nelson National Law Group was comprised of California-licensed attorneys, that paying referral fees to Nelson was ethical, and that attorney's fees generated from the case would be shared only with California-licensed attorneys employed by Nelson. Thereafter Nelson referred roughly 33 cases to KCT. Since being referred these cases by Nelson, KCT has been fully responsible for all aspects of the client representation and has performed all of the legal work necessary to represent these clients.

3. KCT recently became aware of facts that have raised concerns as to whether KCT can ethically or legally pay Nelson any attorney's fees generated from the referred cases. *First*, KCT became aware that Nelson is not comprised of lawyers licensed to practice law in California. Instead, Nelson is comprised of a single attorney who is licensed in Arizona. *Second*, Nelson National Law Group is not a law firm or legal entity registered to practice law or to do business in the State of California, and never has been. *Third*, KCT became aware that Nelson has a secret agreement (secret from KCT and the referred clients) with non-lawyers wherein Nelson intended directly or indirectly to share the attorney's fees generated from the referred cases with the non-lawyers, contrary to California Rule of Professional Conduct 1.5.1. None of these facts were ever disclosed to the referred clients.

4. KCT now has serious concerns that complying with the referral agreement and sharing attorney's fees with Nelson may violate California law and California's Rules of Professional Conduct. With this Complaint, KCT seeks a declaration of the rights of the various parties and to ensure that all attorney's fees are distributed in compliance with California law.

### THE PARTIES

5. Plaintiff Kershaw, Cook & Talley PC ("KCT" or "Plaintiff") is a professional corporation, duly incorporated under the laws of the State of California, with its principal place of

business in Sacramento, California.

6. Plaintiff is informed and believes that defendant Nelson National Law Firm, LLC ("Nelson" or "Defendant") is a limited liability company formed under the laws of Arizona, doing business under the Arizona-registered trade name Nelson National Law Group, with its principal place of business in Phoenix, Arizona, and is a Citizen of the State of Arizona.

## JURISDICTION AND VENUE

7. Jurisdiction in this Court is proper under 28 U.S.C. § 1332 (Diversity of Citizenship) in that the controversy is between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs. This Court has *in personam* jurisdiction over Defendant. The present dispute arises out of and relates to Defendant's contacts with this forum and specifically concerns Defendant's alleged interest in attorney's fees for services exclusively performed by KCT in this judicial district.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District, in that the legal services which are the subject of this action were performed in this District as part of the Camp Fire litigation, which has been adjudicated in this federal judicial district.

## GENERAL ALLEGATIONS

9. KCT is among the most well-respected and highly recognized plaintiff's firms in the country. The California-licensed lawyers of KCT have over 100 years of combined experience and expertise prosecuting mass torts, class actions, and other complex litigation.

10. Defendant is an Arizona law firm. Defendant is not a California law firm and employs no lawyers licensed to practice law in California. Defendant is not a California-licensed business entity. Defendant has no client trust account maintained in California. Neither the Nelson National Law Firm nor the Nelson National Law Group are California-registered entities. On information and belief, Defendant employs one lawyer, Brandon Todd Nelson, who is licensed to practice law in Arizona, but is neither licensed to practice law in California nor is admitted to the United States District Court for the Northern District of California.

11. In the wake of the 2018 Camp Fire, Defendant, along with a lead generator, sought

to secure Camp Fire victims as plaintiffs to pursue lawsuits against PG&E for damages. Defendant's business model is referring clients; it finds mass tort victims and refers them to reputable law firms to provide legal services. At the time KCT, with its strong reputation as a leading plaintiff's firm, was investigating Camp Fire claims and advocating for Fire victims, when Defendant approached KCT with an offer to refer Camp Fire clients. In exchange, Defendant asked KCT for 40% of the attorney's fees KCT would earn representing the referred clients.

12. No "agreement" between the law firms about the referrals was ever reduced to a signed written contract between KCT and Defendant.

13. Moreover, during the correspondence and negotiation between the two firms about such referrals, Defendant failed to disclose a number of material facts to KCT, of which KCT was unaware during and following the negotiations. Among other things, Defendant failed to disclose to KCT (and, on information and belief, also failed to disclose to the *affected referred clients*), the following facts and material terms:

- Defendant law firm at the time had, and currently has, no lawyers licensed to practice law in California, and has no client trust account maintained in California, and thus could not represent any such clients in any California fire litigation without violating California Rules of Professional Conduct 5.5 (Unauthorized Practice of Law) and 1.15 (Safekeeping Funds and Property of Clients and Other Persons), among others;

- Defendant law firm intended, directly or indirectly, to share legal fees with non-lawyers in California in potential violation of California Rule of Professional Conduct 5.4 (Financial and Similar Arrangements with Nonlawyers);

- Defendant law firm failed to disclose to the referred clients and to KCT that it was not licensed in California and thus not authorized to practice law in California and also failed to disclose to referred clients and KCT that it intended to share attorney's fees, directly or indirectly, with non-lawyers;

- Defendant expected 40% of attorney's fees, even though its attorney is not licensed in California, Defendant is not registered in California, and it would provide no legal services to the referred clients;

- That such an arrangement violates Arizona's Rules of Professional Responsibility;
- Defendant could not assume joint responsibility with KCT for the referred clients, should it become necessary, because Defendant is neither registered, nor its attorney licensed, in California (again, implicating Rule 5.5);
- Defendant did not intend nor could it meet its duty of communication with, or its duty to provide diligent and competent representation to, any referred clients, because its attorney is not licensed in California (and could not do so without violating Rule 5.5); *and*
- That as a result of the foregoing, any fee sharing agreement is forbidden by the rules of professional conduct in both California and Defendant's home state of Arizona.

14. Referred clients were not informed of any of the above material facts and terms in their engagement letters. Without waiving, and hereby preserving all relevant privilege attendant to the document pursuant to Cal. Bus. & Prof. Code § 6149, referred clients entered into a Camp Fire Investigative & Retention Agreement ("Client Engagement Letter") that was signed by KCT and the respective referred client(s) and disclosed that Defendant would also be representing the referred client. Defendant did not execute or sign the respective Client Engagement Letters. The Client Engagement Letters at paragraph seven state "the law of the State of California will govern any dispute arising as to this contract."

15. On June 20, 2020, the Bankruptcy Court for the Northern District of California (Bankruptcy Case No. 19-30088-DM) confirmed the Debtors' Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code. On July 1, 2020, the Plan became effective and the Fire Victim Trust was created. The Fire Victim Trust evaluates, administers, processes and resolves eligible claims arising from the 2018 Camp Fire.

16. The Fire Victim Trust administers an online portal ("Portal") to handle such claims. The Portal is the secure website to exchange information between a Fire Victim or a Fire Victim's law firm and the administrators of the Fire Victim Trust. Only persons authorized by the Claims Administrator and the Claims Processor may use the Portal. A lawyer who requests access to the Portal, or who is a member of a law firm that has not yet been granted access, must submit an access

request for processing.

17. KCT is registered with the Fire Victim Trust as the primary payee for KCT's Camp Fire clients, including those clients Defendant referred to KCT. The Fire Victim Trust then pays approved claims to KCT's California-maintained client trust account, and KCT, in turn, transmits payments to its clients, less KCT's attorney's fees and costs. KCT is informed and believes that Defendant does not have a client trust account maintained in California.

18. On May 13, 2022, KCT received an email from the Fire Victim Trust relating that Defendant submitted a request to create a "shared portal" with KCT to have access to data, information, and notices for a list of some 52 clients identified by Defendant. The Fire Victim Trust also asked whether KCT or Defendant would be the primary firm for payment purposes and advised that Defendant had submitted an Update Attorney Representation Form to the Fire Victim Trust representing itself as co-counsel for the 52 clients. KCT promptly informed the Fire Victim Trust that it did not consent to Defendant's request. The Fire Victim Trust responded that it received KCT's communication, but did not formally confirm that Defendant would not be designated as primary payee, have access to the portal, or be authorized as co-counsel.

19. By this action, KCT seeks to enjoin Defendant from proceeding with its request for a "shared portal" or being designated by the Fire Victim Trust as a representative or primary payee of referred clients. KCT also seeks to enjoin Defendant from collecting any funds or attorney's fees directly from the Fire Victim Trust because, *inter alia*:

   a. Both California and Arizona rules of professional conduct prohibit such an agreement, as described herein;

   b. Defendant has made no enforceable agreement with KCT regarding the payment of any kind of fee, because there was no meeting of the minds, and multiple material terms were uncertain or never disclosed;

   c. KCT never agreed that Defendant serve as a primary payee from the Portal;

   d. Defendant has no client trust account maintained in California, and thus its receipt of settlement funds would violate California Rule of Professional Conduct 1.15, and could implicate other rules and regulations relating to client funds; *and*

      e.      Defendant seeks to collect a referral fee of 40% of KCT's attorney's fees generated from the referred clients, in contravention of Arizona's ethical rules.

20.    KCT will suffer irreparable harm if Defendant collects payments from the Fire Victim Trust, because, among other issues:

      a.      With awareness of the material facts and circumstances described in Paragraph 13 above, KCT would be engaged in fee sharing (albeit unwillingly) that is prohibited and unenforceable, and in violation of applicable rules and statutes, and may face liability as a result;

      b.      For the same reasons, KCT may also face reputational harm;

      c.      KCT will suffer further irreparable harm in that it will have incurred, and will continue to incur, legal fees and costs in contesting Defendant's request, which fees and costs it will not recover should Defendant be determined to have no rightful claim to collect payments from the Fire Victim Trust; *and*

      d.      KCT will incur time and resources that are not compensable by any monetary award.

      e.      Moreover, KCT's attorney-client relationship with its clients may be irreparably harmed.

21.    KCT's Camp Fire clients are also at risk of irreparable harm if Defendant collects payments from the Fire Victim Trust, as they will incur legal fees collecting their justly deserved damages in the event Defendant, who has no client trust account maintained in California, absconds with the payouts. If this occurs, KCT's clients, many of whom have suffered serious physical injuries and emotional traumas, will incur time and resources, and potentially loss of settlement funds and emotional distress, that are not compensable by any monetary award.

22.    In addition to the injunctive relief sought, KCT also seeks a declaration that it is not obliged to share with Defendant the attorney's fees KCT earned from the work it exclusively performed for the referred clients, and that Defendant is not entitled to any attorney's fees; or in the alternative, if the Court determines otherwise, that the Court issue a declaration of the rights and duties of the parties that establishes what payments may be appropriately made under California law

7
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

and the California Rules of Professional Conduct.

## FIRST CAUSE OF ACTION

### (Preliminary Injunction Enjoining Fee Collection)

23. KCT incorporates by reference paragraphs 1 through 22 of this Complaint as though the same were set forth in full.

24. KCT has not made any agreement or signed any contract that permits Defendant to collect payments from the Fire Victim Trust. Defendant does not have a client trust account maintained in California and has no attorneys licensed to practice in California. If Defendant is allowed to collect payments from the Fire Victim Trust, such payments would amount to sharing attorney's fees in violation of the California Rules of Professional Conduct and also in contravention of Arizona law, as explained in detail below.

25. KCT will suffer irreparable harm if an injunction is not granted to restrain Defendant from collecting payments from the Fire Victim Trust, in that it will incur legal fees and costs in contesting Defendant's request which it will not recover once it is determined that Defendant has no legal or rightful claim to collect payments from the Fire Victim Trust. Further, KCT will incur time and resources that are not compensable by any monetary award.

26. The balance of hardships weighs in favor of KCT. KCT will suffer immediate injury if Defendant is not enjoined from collecting payments from the Fire Victim Trust; whereas Defendant will be able to assert its claims, if any, in court.

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

27. KCT incorporates by reference paragraphs 1 through 26 of this Complaint as though the same were set forth in full.

28. There currently exists a dispute as to whether KCT may legally and ethically share its attorney's fees with Defendant relating to KCT's representation of Camp Fire clients whom Defendant referred to KCT.

29. Defendant is not entitled to any attorney's fees because no enforceable contract between the two law firms existed under California contract law, because there were undisclosed

material facts and uncertainty (to say the least) as to multiple material terms, many of which are prohibited under applicable California law and California's Rules of Professional Conduct governing the legal profession in California. Undisclosed facts included, among other things: Defendant's inability to practice law in the state of California; Defendant's intent to share fees directly or indirectly with non-lawyers; Defendant's lack of intent to meet duties owed to the referred clients, because it could not legally do so; the fact that such a fee sharing agreement would be prohibited in both California and Arizona; and Defendant's expectations of receiving a 40% referral fee despite performing no legal services. Moreover, uncertain material terms included, among other things, the amount and nature of work to be completed by each law firm.

30.     Even if a meeting of the minds existed (it did not), any resulting contract also would be unenforceable, because it would violate the California Rules of Professional Conduct, the Arizona Rules of Professional Conduct, and the clearly articulated public policy of the State of Arizona, for multiple reasons:

*First,* any such contract would contravene California Rule of Professional Conduct 1.5.1 (Fee Divisions Among Lawyers). That rule instructs that:

> Lawyers who are not in the same law firm shall not divide a fee for legal services unless:
>
> (1)     the lawyers enter into a written agreement to divide the fee;
>
> (2)     the client has consented in writing, either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably practicable, after a full written disclosure to the client of:
>
> (i) the fact that a division of fees will be made;
>
> (ii) the identity of the lawyers or law firms that are parties to the division; and
>
> (iii) the material terms of the division; and
>
> (3)     the total fee charged by all lawyers is not increased solely by reason of the agreement to divide fees.

The referred clients could not and did not consent to any fee sharing agreement as required by Rule 1.5.1, because the "material terms of the division" were not disclosed in the Client Engagement Letter. Both law firms appear as the "Attorneys" being engaged on the Client

1  Engagement Letter, but the Client Engagement Letter did not explain how responsibility would be
2  divided between KCT and Defendant and did not advise that Defendant did not intend to meet any
3  professional duties owed to the referred clients because it could not, including, but not limited to:
4  the duty of competent representation (Rule 1.1), which includes being licensed in the state in
5  which the litigation is pending; the duty of diligent representation (Rule 1.3); and the duty of
6  communication (Rule 1.4(a)). Without the inclusion of such material information, the referred
7  clients could not give informed consent to any fee sharing agreement, and no such agreement is
8  enforceable in California as against Defendant.

9  31.  *Second*, a pure "referral fee" is prohibited in Arizona, where Defendant law firm is
10  located, and where its sole attorney is licensed. Arizona Ethics Opinion 04-02 states:

> Arizona, unlike some other states, does not allow a lawyer to be paid a fee merely for recommending another lawyer or referring a case. Instead, Arizona allows 'referral fees' only in the sense that lawyers who are not in the same firm may divide a fee as provided in ER 1.5(e).

14  Arizona Rules of Professional Conduct, Rule 1.5(e) allows fee sharing only when there is
15  written disclosure to the client of *how the firms will divide responsibility* for the matter among
16  themselves, and if the total fee is reasonable. Arizona's Rule 1.5(e), like California's version of
17  the same rule, also requires full disclosure and consent to the terms of such division, which as
18  described above, were not provided. Moreover, Arizona requires that fee sharing arrangements
19  must be *in proportion to services actually performed*, otherwise they are against public policy.
20  *Peterson v. Anderson*, 745 P.2d 166, 171, n.6 (Ariz. 1987).

21  32.  As alleged above, there was no full disclosure to the referred clients of the material
22  terms of any fee sharing agreement, and Defendant provided no legal services to the referred
23  clients; as a result, Defendant is not entitled to a fee sharing arrangement that would explicitly
24  violate the attorney ethics rules in the state where its attorney is licensed.

25  33.  Even if a referral fee would not violate applicable rules of professional conduct in
26  both California and Arizona, as alleged above, any payment owed to Defendant would be a pure
27  referral fee (not a fee sharing agreement in which both attorneys represent the client) – and a 40%
28  referral fee is wholly unreasonable, if not unconscionable. Defendant provided no legal services

to the referred clients. It merely referred clients to KCT, who performed all legal services, in a state where Defendant could not perform legal services because Defendant has no attorneys licensed to practice law in California nor is admitted to the United States District Court for the Northern District of California.

34. A declaratory judgment is necessary and proper pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, because, as alleged above, there is an actual and justiciable controversy between KCT and Defendant regarding the fees earned on account of work for the referred clients.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant, including:

1. A preliminary and permanent injunction enjoining Defendant, and all persons acting in active concert or participation with it, from requesting, demanding, or receiving payment from the Fire Victim Trust.

2. A declaration that Plaintiff is not obligated to share any attorney's fees with Defendant, and that Defendant is not entitled to any attorney's fees related to the Camp Fire claims and recoveries; or, in the alternative, a declaration of the rights and duties of the parties that establishes what payments may be appropriately made between the parties under California law and the California Rules of Professional Conduct.

3. For such other relief as the Court deems necessary, appropriate, or proper and costs of suit.

**DEMAND FOR JURY TRIAL**

In accordance with F.R.C.P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

DATED: June 9, 2022         DOWNEY BRAND LLP

By: _____
JAMIE P. DREHER
Attorneys for Kershaw, Cook & Talley PC

1812899v1

11
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF